IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-CV-00165-GCM

| | |
|---|---|
| SAKRETE OF NORTH AMERICA, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) **ORDER** |
| ARMTEC LIMITED PARTNERSHIP, | ) ) ) |
| Defendant, | ) ) ) |

**THIS MATTER** is before the Court on Defendant's Motion to Compel Arbitration and Stay Proceedings [Doc. No. 7], Plaintiff's Response to Defendant's Motion to Compel Arbitration and Stay Proceedings [Doc. No. 10], and Defendant's Reply to Plaintiff's Response [Doc. No. 11]. For the reasons stated below, the Defendant's motion is **GRANTED.**

**I.     FACTUAL BACKGROUND**

Sakrete has owned Trademark Registration No. 568874, Sakrete®, since 1936. Doc. No. 1, Ex. 1, Complaint, at ¶ 5. Sakrete is a well-known brand name for packaged dry mix concrete, packed dry mortar mix, and packaged dry sand mix used throughout North America and elsewhere. *Id*. Plaintiff Sakrete licenses the trademark to manufacturers who produce and distribute Sakrete branded products in specific geographic areas. *Id*. ¶ 6. Defendant Armtec was a Licensee of Sakrete under two contracts, each dated September 13, 1984. Doc. No. 10, Attachment A, Contract, at 4. Armtec was licensed to use Sakrete trademarks in the production, packaging, and sale of dry concrete, mortar, and sand mixes in Alberta, Manitoba, and Saskatchewan, Canada. Complaint at ¶ 5, 6, 10. The licensing contract expressly permitted

Armtec to assign the Contract to certain third parties, including (a) "a purchaser of all of the assets of [a] party" or (b) a "bona fide successor in business." Contract, at 3–4, ¶ 7–8. The Contract neither requires Armtec to obtain Sakrete's consent before assigning the licenses nor prohibits assignment to any particular third party. The Contract does, however, grant Sakrete the right to cancel the licenses if Armtec breaches the Contract. Contract at 3. In the event Armtec disputes the cancellation grounds provided by Sakrete, the parties agreed to arbitrate whether the cancellation was valid, if Armtec objected within thirty days. *Id*. The relevant arbitration clause, in its entirety, provides as follows:

> (c) If Licensor at any time is of the opinion that Licensee has breached any other obligation imposed on it hereunder, Licensor may notify Licensee in writing of its intention to cancel this contract, specifying therein the ground on which the asserted right of cancellation is based. **Such motion shall operate to cancel this contract thirty days from the receipt thereof by Licensee, unless Licensee, within such thirty-day period, notifies Licensor in writing that it desires to submit to a board of arbitration the asserted grounds for cancellation, which notice shall also appoint a member of the arbitration board. If Licensee so notifies Licensor, then this contract shall not be cancelled unless and until thirty days after the arbitration board appointed in accordance with the provisions of sub-paragraph (d)** of this paragraph shall find as a matter of fact that Licensee has performed or permitted acts or omission which constitute a breach of one of such other covenants; provided, however, that no cancellation under this sub-paragraph shall be effective if Licensee corrects said breach within thirty days after receiving notice of the decision of the board of arbitration;

Contract, at 3. (Emphasis added).

Plaintiff Sakrete's principle competitor is Quickrete Companies, Inc. ("Quikrete"). Complaint at ¶ 12. Quikrete purchased Target Products, Ltd. ("Target") prior to 2010. *Id*. Target produces and promotes Quikrete in Canada in direct competition with Sakrete. *Id*. On November 2, 2010, Defendant Armtec notified Plaintiff Sakrete, in writing, that it had sold its packaging plant in Calgary, Canada that manufactured Sakrete branded products to Target. *Id*. at ¶ 13. This packaging plant apparently constituted substantially all of Armtec's packaging

business. Doc. No. 6 Attachment B, February 9th Letter, at 1. Defendant Armtec sold the plant on November 1, 2010, and the sale included the Sakrete licenses. *Id*.

Plaintiff Sakrete responded on November 8, 2010, stating that the assignment of licenses to Target created an "untenable situation" because Target is allegedly a subsidiary of Quikrete, and that Sakrete had no choice but to cancel Armtec's licenses. Doc. No. 10, Ex. 2, November 8th Letter, at 13. On November 11, 2011, Defendant Armtec notified Plaintiff Sakrete that its assignment of the Sakrete licenses to Target did not give Plaintiff Sakrete the right to cancel the licenses under the Contract. Doc. No. 6, Ex. 3, Attachment B, November 11th Letter, at 2–3. This letter noted that Plaintiff Sakrete had failed to specify facts which would constitute a breach of the contract, asked Sakrete to reconsider, and explicitly preserved all legal remedies. *Id*.

The two parties engaged in significant negotiations between November 11, 2010, and February 1, 2011. Plaintiff and Defendant discussed creating an agreement that would allow Target to pay to use the Sakrete licenses for a limited period of time after the licenses were officially terminated on Dec. 31, 2010. Doc. No. 10, Attachment B, Ex. 5, Brief in Opposition, at 23. Discussions fell apart, and on February 1, 2011, Plaintiff Sakrete issued a letter stating:

> Notice is hereby given that Sakrete of North America, LLC ('Sakrete') hereby terminates the Sakrete License Agreement ('the License') dated September 13, 1984 based upon the improper assignment of the License by Armtec to Target Products, Ltd.

Doc. No. 10, Attachment B, Ex. 7, Brief in Opposition at 29.

In that letter, Plaintiff Sakrete directed "Armtec, Target and any of their affiliates" to immediately cease using the Sakrete® trademark. *Id*. Defendant Armtec made one final attempt to negotiate the issue without involving lawyers. February 9th Letter at 1. This overture apparently having been denied, Defendant Armtec demanded arbitration on March 1, 2011.

3

Doc. No. 6, Ex. 4, Attachment C, March 1st Letter at 1. Plaintiff Sakrete failed to proceed to arbitration and instead filed suit in the Mecklenburg County Superior Court. Complaint at 1. Defendant filed a timely removal to this Court and now seeks to compel arbitration pursuant to the Contract. *Id*.

## II. ANALYSIS

An order to compel arbitration must be granted if the moving party has demonstrated: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate and foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–501 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

Plaintiff Sakrete does not dispute prongs one, three, or four of the *Adkins* test, but instead denies that the relevant arbitration agreement covers the present dispute. Plaintiff argues that the Contract expired by its own terms thirty days after Sakrete's November 8 Letter, when Armtec failed to make an arbitration demand. Sakrete alleges that the "limited arbitration provision" only submitted claims to arbitration that were made within the thirty day window, which began once Sakrete provided a valid cancellation notice. In support of its argument, Plaintiff cites *Virginia Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113 (4th Cir. 1993). In *Virginia Carolina Tools*, the two parties agreed to an option contract with a sixty day expiration period and a broad, nonspecific arbitration clause. 984 F.2d at 115. The buyer attempted to exercise the option after its expiration, and upon the seller's refusal, sought arbitration of the dispute. *Id*. The Fourth Circuit held that the broad, nonspecific arbitration clause did not submit this dispute

4

to arbitration because of the predetermined termination date. *Id*. at 118. Here, the termination date is tied to the timing of the request for arbitration. Further, the *Virginia Carolina Tools* court specifically distinguished its holding from procedural objections to arbitration. 984 F.2d at 119.

The arbitration clause at issue here is not a general arbitration clause, but, as Plaintiff acknowledges, a "limited arbitration provision," which submits to arbitration only Sakrete's given grounds for cancellation. The issue before the Court is therefore whether the present dispute is within the scope of the arbitration provision. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Durham County v. Richards & Associates, Inc.*, 742 F.2d 811, 815 (4th Cir. 1984) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). This federal policy creates a "heavy presumption" that the scope of an otherwise valid arbitration agreement must be resolved in favor of arbitration. *Levins v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011). Courts must avoid reaching the merits of arbitrable issues in determining whether the parties have agreed to submit a claim to arbitration. *In re Mercury Const. Corp.*, 656 F.2d 933, 939 n. 9 (4th Cir. 1981).

Defendant Armtec claims that selling its packaging plant to Target did not breach any part of its licensing contract with Sakrete. Armtec further asserts that the notice it received on November 8, 2010 did not trigger the thirty day cancellation window because it failed to specify how Armtec had breached the licensing agreement. Whether a proper cancellation notice was provided is inextricably tied to the dispute over the termination justifications as the notice of cancellation was required to include the asserted right of cancellation. Thus, to determine if Defendant Armtec's demand was untimely, the Court would be required to decide the merits of

5

an otherwise arbitrable claim: whether the November 8th cancellation notice was sufficient to trigger the thirty day period.

Furthermore, delayed claims are arbitrable, even when the contract specifies a time window to demand arbitration. In *John Wiley & Sons, Inc. v. Livingston,* the contract specified that the arbitration demand must be filed within four weeks and failure to do so would constitute abandonment of the claim. 376 U.S. 543, 556 n. 11 (1961). The Supreme Court held that failure to file within this four week time period was a procedural concern to be addressed by the arbitrator. *Id.* at 557, *quoted in Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997). If Armtec's arbitration demand was impermissibly delayed, Sakrete can raise delay as a defense during arbitration, but Sakrete cannot use potential delay to avoid arbitration altogether. "When a limitations question is raised to defeat a motion to compel arbitration . . . the question is one for the arbitrator, not the courts." *Durham*, 742 F.2d at 815 (holding that a limitations question is different in the context of a motion to compel arbitration than when a breached arbitration agreement is raised to dismiss a lawsuit). If a demand for arbitration is made and denied, the court cannot look to the timeliness of the demand. *Local 1422, Intern. Longshoremen's Ass'n v. S.C. Stevedores Ass'n*, 170 F.3d 407, 409 (4th Cir. 1999). "Questions of delay, laches, statute of limitations, and untimeliness raised to defeat compelled arbitration are issues of procedural arbitrability exclusively reserved for resolution by the arbitrator." *Glass*, 114 F.3d at 456. Once it is determined that the parties agreed to submit the issue to arbitration, delay will not defeat a motion to compel arbitration. *Id*.

Here, the parties explicitly submitted disputes over Sakrete's grounds for terminating the licenses to arbitration. Defendant Armtec demanded arbitration on March 1, 2011, and Sakrete

has refused to comply. Whether Defendant Armtec's arbitration demand was untimely must be decided by the arbitrator.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Arbitration and Stay Proceedings is **hereby GRANTED.**

Signed: July 27, 2011

Graham C. Mullen
United States District Judge